## John H. Wise et al. v. American Trust & Savings Bank.

1. NEGOTIABLE INSTRUMENTS—*An Indorsement Held to Have Been Unauthorized.*—The court discusses the evidence and concludes that the agent of appellants indorsed the note sued on in this case without authority and without any consideration moving to appellants but solely as an accommodation, and that appellants are not liable on account of said indorsement.

**Assumpsit**, against indorsers of a promissory note. Appeal from the Circuit Court of Cook County; the Hon. CHAS. G. NEELY, Judge, presiding. Heard in this court at the October term, 1897. Reversed. Opinion filed March 24, 1898.

BANGS, WOOD & BANGS, attorneys for appellants.

MORAN, KRAUS & MAYER, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This was a suit in assumpsit by appellee against appellants, John H. Wise and Henry A. Wise.

The declaration avers, in substance, that June 10, 1895, at Chicago, Schram & Co. executed their promissory note of that date, for the sum of $860.45, payable to appellants four months after the date thereof; that appellants indorsed the same by the name of Christy & Wise, and delivered it to J. A. Brecher, who indorsed and delivered it to the appellee, and that Schram & Co., when they executed the note, were and have since continued to be insolvent, and that the institution of a suit against them would be unavailing, etc. The appellants pleaded the general issue and three special pleas. The first special plea avers, in substance, that the note and indorsements thereon were obtained from the appellants by J. Arnold Brecher, Schram & Co. and Edward A. Filkins, by fraud and circumvention; that, at the time, etc., Brecher purchased from appellants fifty barrels of whisky for cash, and executed to appellants, in payment therefor, his check for $860.45, and, with intent to cheat and defraud appellants, procured Schram & Co. to execute the note and deliver the same to Brecher, which they, Schram & Co., in pursuance of said fraudulent scheme, did, without any consideration, and that Brecher, in pursuance of said fraudulent scheme, procured Filkins to indorse the name Christy & Wise on the note, without any authority from appellants, who, until the maturity of the note had no knowledge thereof, and at such maturity informed appellee that said indorsement was not appellants', but was falsely

and fraudulently obtained without the authority or knowledge of appellants.   The second special plea is substantially the same as the first, with the exception that it avers that the indorsement was obtained by Brecher, Schram & Co. and Filkins, without consideration.   The third special plea avers that appellants did not make and deliver the writing in the declaration mentioned in manner and form as therein alleged, and is verified by the affidavit of Harry E. Wise.

The appellee filed a *similiter* to the plea of the general issue, and replied to the special pleas, substantially traversing the allegations therein.   The cause, by agreement of the parties, was tried by the court without a jury, and the court found the issues for appellee and assessed its damages at and rendered the judgment for the sum of $921.73.

E. A. Filkins, a witness for appellee, testified that in June, 1895, Christy & Wise, a firm composed of appellants, had a branch store in Chicago; that he had charge of their business, and acted under a power of attorney, which is as follows:

" Know all men by these presents, that John H. Wise and Harry E. Wise, of the city and county of San Francisco, California, composing the firm of Christy & Wise, have made, constituted and appointed, and by these presents do make, constitute and appoint E. A. Filkins, of Chicago, State of Illinois, their true and lawful attorney for them, and in their name, place and stead, to collect all debts which may be due and owing to said Christy & Wise; to settle all debts and obligations due said firm by taking notes therefor, or otherwise, and to discount said notes whenever he may deem it necessary or proper, with full power and authority to indorse the firm name thereon for that purpose within the State of Illinois, but not elsewhere.

" Giving and granting unto their said attorney full power and authority to do and perform all and every act and thing whatsoever requisite or necessary to be done in and about the premises, as fully and to all intents and purposes as they might or could do if personally present, hereby ratifying and confirming all that their said attorney shall lawfully do, or cause to be done, by virtue of these presents.

In witness whereof they have hereunto set their hands and seals, the 7th day of September, A. D. 1894.

JOHN H. WISE,
HARRY E. WISE."

He further testified that he indorsed the name Christy & Wise on the note, and received from Brecher, at the time he indorsed the note, a check for the face of the note which he deposited in the Lincoln National Bank to the credit of appellants; that previous to that time Brecher had agreed to sell fifty barrels of whisky for appellants, and had had the warehouse receipts for the whisky in his office safe for ten or twelve days; that the elder Mr. Wise was in town, and anxious to have the matter closed up; that he, Filkins, saw Brecher, who said his customer was out of the city, but that Brecher agreed to give him a check if he, Filkins, would indorse the note to enable him, Brecher, to make his account good at the bank, and that he, Brecher, would stand the discount. The witness, on being asked if he knew where the note came from, said he only knew that Brecher handed it to him for indorsement; that he had never seen it before; that he knew no firm by the name of Schram & Co.; that appellants never had any business with that firm, and that the check which he received from Brecher was for the exact price of the fifty barrels of whisky. The witness identified the two following telegrams; the first sent by him to appellants, the second received by him in Chicago from San Francisco from appellants:.

" April 8, 1895.

CHRISTY & WISE,
        213 Sampson Street, San Francisco.

Have a cash customer for fifty barrels F. & W. bonded goods. How about 1,000 barrels proposition, letter 16th ultimo ? "

" E. A. FILKINS, Chicago.

If sale strictly cash sell. Have wired F. & W. on 1,000 barrel proposition as to Brecher's authority."

Filkins further testified that he never informed appellants of the note in question.

Chapman, appellee's cashier, testified that June 18, 1895, Brecher, who had deposited with appellee for three or four years and had had a line of discount with the bank as high as $30,000, presented the note to him; that he looked at the indorsement, Christy & Wise, looked them up in Dun's book where they were rated at a million dollars, discounted the note and credited Brecher with the proceeds; that Brecher died September, 1895, having overdrawn his account at the bank $207.14. This witness also testified that prior to the maturity of the note he made no inquiry as to who indorsed the name Christy & Wise on it.

Samuel Schram, called by appellee, testified that he was Schram & Co., that the signature to the note was his; that he was insolvent when he signed it, and had been ever since.

Examined by appellants' counsel, this witness could not tell when he signed it, or where, except, perhaps, at Brecher's office, or why he signed it, or in fact anything about it beyond recognizing his signature, and that he received no consideration for it. He testified that he never had any business transactions either with Christy & Wise or E. A. Filkins. Appellee's counsel put the note and indorsement in evidence and rested.

Charles R. Murray, bookkeeper for appellants, produced appellants' books of original entry, which showed a sale of the whisky to Brecher July 10, 1895. The witness testified that, at the last date, appellants received Brecher's check for $860.45 on a Milwaukee bank, for the whisky, payable to Christy & Wise; also that he knew what the telegrams in evidence referred to; that they referred to the sale of the fifty barrels of whisky to Brecher; also that his duty was to take charge of appellants' negotiable paper until disposed of, and that he never saw the note in suit till after its maturity, when appellants received notice to protest.

M. A. Dempsey testified that he was one of the attorneys for the estate of Brecher, and produced ten warehouse receipts of Freiberg & Workum, each for five barrels of

whisky, for account and subject to the order of Christy & Wise, and numbered from 4002 to 4011, both inclusive, which he said were in his possession as the attorney of Brecher's estate, and which were put in evidence.

Filkins, recalled by appellants, said the understanding with Brecher was that the whisky was to be sold for cash.

The foregoing was substantially all the evidence.

Had Filkins authority to indorse the note in the name of appellants, either by virtue of the power of attorney, or otherwise? He says he was acting under the power of attorney as his authority. The only power granted to him by that instrument in reference to negotiable paper is "to settle all debts and obligations due said firm by taking notes therefor, or otherwise, and to discount said notes whenever he may deem it necessary or proper, with full power and authority to indorse the firm name thereon for that purpose, within the State of Illinois, but not elsewhere." Now, if the note in question was taken for a debt or obligation due to Christy & Wise, then Filkins was authorized by the power of attorney to have it discounted, if proper so to do, in his judgment, and, for the purpose of having it discounted, to indorse it in appellants' firm name; otherwise he had no such authority. The note was not taken for, or for the purpose of settling, any debt or obligation due to appellants. It was not taken at all by appellants or either of them, or by Filkins, their agent.

Filkins, appellee's main witness as to the transaction, testified that the indorsement was made for the purpose of enabling Brecher to make his account good in the bank, and the evidence of Mr. Chapman, appellee's cashier, shows that Brecher retained the note in his possession after the indorsement by Filkins, and had it discounted and the proceeds credited to his account in the appellee bank. We think it clear that the power of attorney did not authorize the indorsement by Filkins, and appellee's counsel do not seriously contend the contrary.

Was Filkins authorized to make the indorsement otherwise than by the power of attorney? The evidence is, as

we think, conclusive that his only authority in respect to the fifty barrels of whisky was to sell for cash. Appellee's counsel lay great stress on the evidence of Filkins that the warehouse receipts for the whisky were delivered to Brecher ten or twelve days before June 18, 1895, in pursuance of an arrangement between Filkins and Brecher that the latter should sell the whisky for appellants, and also contend that, if there was a sale to Brecher, it was not for cash. Waiving the question of the authority of Filkins to employ a sub-agent, we can not perceive how such delivery of the receipts to Brecher can affect the question, and we differ from counsel's contention that the sale was not for cash. The testimony of Filkins shows a cash sale. He testified that Brecher said his customer was out of the city, and he, Brecher, closed the transaction by giving his own check.

Murray, appellants' bookkeeper, testified that he knew of the transaction, and that the sale was to Brecher, and that his, Brecher's, check was turned over to appellants by Filkins; and Filkins says it was deposited in bank to the credit of appellants; appellants' books of original entry, presumably kept under the supervision of Filkins, who says he had charge of the business, show a sale of the whisky to Brecher, and Brecher died September 15, 1895, three months after the transaction, leaving the warehouse receipts for the whisky as assets of his estate. The greater part of the argument for appellee is devoted to insisting on the apparent authority of Filkins to make the indorsement. There is absolutely nothing in the evidence on which to base an argument that appellee was induced to discount the note by any apparent authority of Filkins to make the indorsement. Appellee knew positively nothing of the indorsement, beyond what its cashier could ascertain by mere inspection when the note was presented by Brecher for discount, and the cashier evidently relied on the indorsement of Brecher, with whom the bank had been dealing for years, as a sufficient guaranty of the genuineness of the indorsement "Christy & Wise." Besides, it does not appear from the

evidence that Filkins had ever before indorsed appellants' firm name on any note, and from the mere fact that he had charge of appellants' business in Chicago, his authority to make such indorsement could not be inferred.

The evidence shows that the note was made by Schram without consideration, and solely for Brecher's accommodation, and that Filkins indorsed it without authority so to do, and without any consideration moving to appellants, and solely for Brecher's accommodation. Brecher did not even use the proceeds of the note for the purpose of making his check good, because the evidence shows that he gave a check on a bank in Milwaukee, Wisconsin, June 10, 1895, in payment of the whisky, and that, June 18, 1895, he had the note discounted and the proceeds placed to his credit in the appellee bank, and drew against the same.

The finding of the trial court is manifestly against the weight of the evidence. The judgment will be reversed.